The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

**Jay Roger BASHARA,** Defendant-Appellant.

No. 82CA0414.

Colorado Court of Appeals, Div. I.

Aug. 25, 1983.

Rehearing Denied Sept. 22, 1983.

Certiorari Denied March 5, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

BABCOCK, Judge.

The defendant, J. Roger Bashara, appeals the judgment of conviction of sexual assault on a child entered upon a jury verdict of guilty. We affirm.

The victim was a moderately to mildly retarded 9-year-old who functioned as a 7-year old. She was found competent to testify and was a witness at trial.

On July 3, 1981, the child returned to her home with a bag of fireworks. Her mother testified that when she questioned her daughter regarding the fireworks, the child immediately became upset, hung her head, and stated that she was a "bad girl." When asked what was wrong, the victim answered that she had gone to "apartment 15," that the man there "had done things she didn't like," and that "she didn't like being a lollipop."

The mother immediately filed a complaint with the Lakewood Police Department. During the investigation the child showed the detective to the apartment where the sexual assault occurred, which was approximately 2½ blocks from the child's home.

After taking the child home, the detective returned to the apartment where he questioned the defendant. The defendant admitted the assault and corroborated the child's version to a substantial degree.

The child testified at trial that the man took her to his apartment in his car, locked the apartment door, and licked her, both on her clothing and on her bare skin, in the area of her breasts, underarms, stomach, legs, feet, and between her legs.

I.

The defendant contends that the trial court abused its discretion in denying the defendant's challenge for cause as to a prospective juror. The defendant argues that a per se rule of exclusion should apply to this juror because he had read a newspaper article regarding a prior conviction of assault against defendant. We disagree.

During voir dire by the prosecutor, the juror indicated he had read "something" about the case in the newspaper, but stated that it would not affect his service as a juror. He made no reference to the substance of the article in open court before the jury panel.

At the request of the defense, the juror was further questioned out of the presence of the jury panel. The juror recalled that the article, which he had read approximately 6 weeks before trial, reported that defendant had either been convicted of or was facing charges for another assault. He could not recall the nature of the prior assault.

The juror repeatedly affirmed his belief that the defendant was presumed to be innocent until the prosecution met its burden of proving his guilt beyond a reasonable doubt and stated that a determination of guilt was to be made only upon evidence presented at trial.

He explained that he had previously applied these principles as a juror in a criminal case involving a bomb threat at the Bear Creek High School. He reported that

there, despite the jury's belief that the defendant was guilty, a not guilty verdict was returned because the prosecutor had failed to meet the burden of proof beyond a reasonable doubt. He explained that, in the bomb threat case, despite the defendant's poor appearance, the jurors put their prejudice relative to his appearance aside and found him not guilty. When asked if he would be able to do so in this defendant's case, he stated that he would.

This juror also indicated that he believed newspapers could be unreliable. Finally, the juror said that he had made no reference about the newspaper article to any other member of the jury panel. The juror assured the trial judge that he would set aside what he had read about the case. The trial judge denied defense counsel's challenge for cause and instructed the juror that he was not to discuss the article with any other juror.

In *People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976), defense counsel specially drew attention to a newspaper article which indicated that the defendants may have been connected with as many as 22 murders across the country and to a story which reprinted a California probation report attributing unfavorable personality profiles to the defendants. In finding no error in the trial court's denial of challenges for cause, the *McCrary* court stated that:

> "The test is whether the nature and strength of the opinion formed or of the information learned from pretrial publicity are such as necessarily raise the presumption of partiality or of the inability of the potential juror to block out the information from his consideration. This question is essentially one of fact which lies within the sound discretion of the trial court and its decision will not be overturned on appeal unless an error is manifest .... It is the trial court which hears the questions put to the juror and the answers given, observes the juror's demeanor while being questioned, and discerns the truthfulness, the sincerity, and the dedication to the high responsibility involved in being a fair and impartial juror."

■ Here, the juror's responses provide sufficient basis for the trial court's determination of his ability to render an impartial verdict according to the evidence admitted at trial and the court's instructions of law. *Cf. People v. Gurule*, 628 P.2d 99 (Colo.1981). Accordingly we hold that a prospective juror's reading of a newspaper article making reference to a prior conviction of the defendant does not automatically disqualify that prospective juror if, as here, the juror states that he can and will set aside what was read and render an impartial verdict according to the evidence and the law. *See People v. Taggart*, 621 P.2d 1375 (Colo.1981).

## II.

■ The defendant also contends that the victim's statements to her mother were inadmissible hearsay. We disagree.

Under the totality of the circumstances surrounding the hearsay statements of the victim to her mother, we are satisfied that the statements were admissible as excited utterances under CRE 803(2).

Here, the child was obviously upset. She was hanging her head and saying that she was a "bad girl." She made the statements to her mother after walking directly home from defendant's apartment, upon the first opportunity to do so. The child's terminology for the assault was appropriate for her functional mental capacity. These circumstances indicate that her statements were inherently trustworthy as reactions to a startling and stressful event, while under the stress caused by the sexual assault. *People in Interest of O.E.P.*, 654 P.2d 312 (Colo.1982).

■ The defendant also asserts that the trial court committed reversible error when, over objection to the hearsay nature of the evidence, the investigating detective testified that the child directed him to the defendant's apartment. We disagree.

Even though hearsay, *see* CRE 801(a)(2), (c) and CRE 802, this evidence was cumula-

tive of other evidence earlier admitted at trial. Moreover, the substance of the evidence was not in controversy. The defendant's theory of defense and the only controverted question at trial was whether there was any touching of the victim by the defendant of her "intimate parts." *See* § 18–3–401(4), C.R.S.1973 (1978 Repl.Vol. 8); § 18–3–405, C.R.S.1973 (1978 Repl.Vol. 8). Accordingly, any possible error involved in the admission of this testimony could only be harmless. *People v. O'Donnell*, 184 Colo. 104, 518 P.2d 945 (1974); Crim.P. 52(a); CRE 103(a).

### III.

The defendant's last contention is that the trial court abused its discretion in refusing to grant a mistrial because the prosecution questioned the investigating detective about the defendant's "prior treatment." Again, we disagree.

During direct examination the investigating detective testified concerning the defendant's admissions including the defendant's statement to him that "he wished he didn't like little girls that way." On redirect examination the prosecution asked the detective the following:

"When the defendant made the statement to you that he liked children that way, or he liked little girls that way, did he make any other statements about this problem that he indicated? Did he indicate, for example, any treatment he had had?"

No response was given by the detective and the trial court sustained defense counsel's contemporaneous objection. The prosecutor immediately dropped that line of questioning. It was only after the prosecution and defense had rested that the defendant moved for a mistrial based upon this question. The motion for mistrial was denied.

The granting or denial of a motion for mistrial is within the sound discretion of the trial court, and the prejudice asserted must be so substantial that the effect on the jury cannot be remedied by anything less than a mistrial. *Hamrick v.*

*People*, 624 P.2d 1320 (Colo.1981). We find no abuse of discretion by the trial court in denying the motion for mistrial.

Moreover, the jury was instructed that its verdict was to be determined only from the facts admitted at trial and that it was not to consider objections of counsel or evidence offered but rejected. It is presumed that jurors follow the trial court's instructions. *People v. Smith*, 620 P.2d 232 (Colo.1980).

Judgment affirmed.

VAN CISE, J., concurs.

PIERCE, J., concurs in part and dissents in part.

PIERCE, Judge, concurring in part and dissenting in part:

Because I believe the challenge for cause should have been granted, I dissent to that issue.

It is not disputed that the juror in question had knowledge of damaging information regarding the defendant which would not normally be admissible in evidence in this case. *People v. Goldsberry*, 181 Colo. 406, 509 P.2d 801 (1973). Although this information might have been available to the jury under some circumstances, the trial court was not aware of that probability at the time the voir dire took place. *See People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979).

It is a matter of fundamental constitutional guarantee that both sides in a criminal trial are entitled to a fair and impartial jury. *Nailor v. People*, 200 Colo. 30, 612 P.2d 79 (1980); *People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976). The situation presented here is too fraught with danger to that right to ignore the constitutional protections. It is too much to ask of a potential juror, even though he vehemently professes an ability to overcome any possible prejudice, to both discipline himself not to let the extraneous knowledge affect his judgment, and also not to divulge the special information of which he is aware, to the rest of the panel.

We are not so short of available jurors that we need to disregard constitutional protections and to require either the prosecution or the defense to accept a juror who has substantive knowledge of either the case or the defendant, which knowledge may not become part of the evidence at trial, and which could have a bearing on the outcome of the trial.

Therefore, I would reverse and remand for a new trial.