The PEOPLE of the State of
Colorado, Petitioner,

v.

The DISTRICT COURT In and For the
CITY AND COUNTY OF DENVER,
State of Colorado, and the Honorable
Warren O. Martin, one of the Judges
Thereof, Respondents,

and

Calvin Preston, Intervenor.

No. 88SA121.

Supreme Court of Colorado,
En Banc.

Jan. 17, 1989.

Norman S. Early, Jr., Dist. Atty., Nathan
B. Coats, Chief Deputy Dist. Atty., Denver,
for petitioner.

David F. Vela, State Public Defender,
John C. Ventura, Deputy State Public De-
fender, Denver, for respondents.

ERICKSON, Justice, delivered the
Opinion of the Court.

A petition for a writ of prohibition was
filed pursuant to C.A.R. 21 after the trial
judge declared a mistrial, disqualified the
deputy district attorney prosecuting the
multi-count felony charges, and directed an
assistant to proceed with the prosecution
and retrial of the case. We issued a rule to
show cause and now make the rule abso-
lute.

The defendant, Calvin E. Preston, was
charged in a multi-count information with
two counts of first-degree kidnapping, two
counts of second-degree kidnapping, first-
degree sexual assault, conspiracy to com-
mit kidnapping and sexual assault, three
counts of extortion, menacing, third-degree

assault, and committing a crime of violence.

Prior to trial, defense counsel filed a motion *in limine* to prevent the deputy district attorney from presenting evidence that the defendant was a co-conspirator with Phil Toomer, a suspected drug dealer and distributor and a member of an alleged outlaw motorcycle gang. Defense counsel also sought to prevent any references to the defendant's involvement in uncharged homicides or burglaries or his participation in the preparation of a "hit list" of individuals suspected of snitching on Phil Toomer. At the *in limine* hearing the deputy district attorney advised the court that S.M., the prosecution's main witness, was present when the "hit list" was being discussed and that she believed she was on the list. She told her sister G.M. about the list and the intent of the defendant and Phil Toomer to "get" the individuals on the list. G.M. later went to her sister's apartment, and saw her sister S.M. run out of her apartment covered with blood. At the same time, G.M. was threatened with a pistol. The deputy district attorney told the court that after G.M. went to S.M.'s apartment, a long investigation culminated with the filing of charges. He also advised the court that he would not offer hearsay testimony regarding the "hit list." Testimony relating to the defendant's participation in uncharged homicides or burglaries, drug dealings, and the outlaw motor-

cycle gang was barred by the trial judge at the *in limine* hearing.[1]

When trial commenced, S.M. was the first prosecution witness, and was questioned about the "hit list." She responded that the defendant and Phil Toomer discussed committing a murder and that she had found out she was on the "hit list." Defense counsel moved for a mistrial and the motion was granted.[2]

Thereafter, defense counsel moved both to disqualify the district attorney's office and to have a special prosecutor appointed. Defense counsel also moved to dismiss the case.

The trial judge denied the motion to dismiss and disqualified the deputy district attorney for violation of the *in limine* court order. The trial judge then directed the deputy's assistant to retry the case as soon as a jury could be obtained.

### Disqualification of the District Attorney

■ The district attorney is part of the executive branch of government, and has broad discretion in selecting the deputies that will appear on his behalf. *People v. Wright*, 742 P.2d 316 (Colo.1987); *see* §§ 20-1-102, -201, 8B C.R.S. (1983).

■ The charges to be filed and the selection and presentation of evidence lie within the discretion of the prosecution and the prosecutor is entitled to wide latitude in presenting his case. *See Wright*, 742 P.2d

---

1. From the record before us, we cannot determine whether the order entered after the *in limine* hearing was violated by the deputy district attorney, and we do not address that issue.

2. The record contains the following testimony:
   District Attorney: In the month of December—I want you to think about December—around towards Christmas time was there anything ever discussed by this defendant in your presence concerning any list?
   Witness: Yes. About a week before Christmas Phillip Toomer and Calvin Preston came over to my house and they were discussing committing a murder which would involve—
   District Attorney: Let's stop right there.
   Defense Counsel: Objection your Honor. I'd like to approach the bench at this time.
   District Attorney: Wait a minute, counsel, let me—

Defense Counsel: No, I'm making my objection.
   District Attorney: Your Honor, this list—
   Court: All right, go ahead.
   District Attorney: Without getting into the detail whether it was your problem, whether you were whatever, did you find out whether or not you were on a list?
   Witness: Yes.
   District Attorney: Okay. And who told you that?
   Witness: Phillip Toomer.
   District Attorney: And did you find out—
   Defense Counsel: Objection, your Honor, hearsay.
   District Attorney: Was that in the presence of the defendant?
   Witness: No.

at 319; *see also Imbler v. Pachtman*, 424 U.S. 409, 426, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976) ("Attaining the system's goal of accurately determining guilt or innocence requires that both the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence.") I ABA Standards For Criminal Justice, The Prosecution Function, 3–1.1 (2d ed. 1982). The trial court, however, also has broad discretion over the mode and presentation of evidence and is the final arbiter of the admissibility of evidence. *See People v. Tippett*, 733 P.2d 1183 (Colo.1987); *People v. Cole*, 654 P.2d 830 (Colo.1982); *People v. Henry*, 195 Colo. 309, 578 P.2d 1041 (1978).

 When a prosecuting attorney purposefully exposes the jury to inadmissible and highly prejudicial evidence, his conduct will not be condoned, and a new trial will be granted. *People v. Goldsberry*, 181 Colo. 406, 509 P.2d 801 (1973).[3] The trial judge may impose a broad array of sanctions to prevent overzealous prosecution, but disqualification of the prosecuting attorney assigned to a particular case does not lie within the scope of the trial judge's discretion. *See People v. Lee*, 630 P.2d 583 (Colo.1981); *Goldsberry*, 181 Colo. 406, 509 P.2d 801; I ABA Standards For Criminal Justice, The Prosecution Function, Standard 3–5.6 (2d ed. 1980).[4]

Here, the trial judge abused his discretion by usurping the district attorney's discretion to select and assign a deputy of his own choice to try the case. If the trial court intended to impose sanctions against the deputy district attorney beyond ordering a new trial, other penalties short of ordering the deputy's substitution were available. For example, the trial court could have reported the deputy district attorney's misconduct to his superior, the district attorney. Other remedies, such as the court's contempt power and the initiation of disciplinary proceedings for unprofessional conduct of a district attorney were available. C.J.C. Canon 3(B)(3) (Code of Judicial Conduct) (a judge should initiate appropriate disciplinary measures against a lawyer for unprofessional conduct of which the judge may become aware); I ABA Standards For Criminal Justice, The Prosecution Function, Standard 6–3.5 and Commentary (2d ed. 1982); *see Nye v. United States*, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); *Losavio v. District Court*, 182 Colo. 180, 512 P.2d 266 (1973); *see also People v. Rozatos*, 699 P.2d 970 (Colo. 1985).

However, the mistrial which resulted from the deputy district attorney's violation of the trial judge's *in limine* order did not provide the trial judge with grounds or authority to disqualify the deputy district attorney from retrying the case that ended in a mistrial.

Rule made absolute.

---

**3.** The commentary to ABA Standard For Criminal Justice, The Prosecution Function, section 3–5.6 (2d ed. 1982) states in part:

*Presenting Inadmissible Evidence*

The mere offer of known inadmissible evidence or asking a known improper question may be sufficient to communicate to the trier of fact the very material the rules of evidence are designed to keep from the fact finder. Moreover, the damage may only be emphasized by an objection to the evidence, so that the offer of inadmissible matter may leave opposing counsel with no effective remedy. This practice and the similar tactic of arguing to the bench or making comments on or off the record in a manner calculated to influence the jury clearly are improper. Many cases have held that such conduct is ground for declaring a mistrial or granting a new trial.

**4.** While a prosecutor is permitted to strike hard blows, he is not at liberty to strike foul ones. *People v. Walker*, 180 Colo. 184, 190, 504 P.2d 1098, 1101 (1972), (*quoting Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)); *see People v. District Court*, 632 P.2d 1022 (Colo.1981) (the duty of a prosecutor is to seek justice, not merely to convict); *People v. Elliston*, 181 Colo. 118, 508 P.2d 379 (1973) (prosecutor must be careful in his conduct to ensure that the jury tries the case solely on the basis of the facts before it.) *See also* C.P.R. DR7–103, 7–106(C)(7) (Code of Professional Responsibility Disciplinary Rules).