The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

2016 CO 32
Supreme Court Case No. 14SC951
Certiorari to the District Court
Boulder County District Court Case No. 14CV30101
Petitioner:
The People of the State of Colorado,
v.

Respondent:

Brian Penn.
Judgment Reversed

en banc
May 16, 2016

Attorneys for Petitioner:
Stanley L. Garnett, District Attorney, Twentieth Judicial District
Sean P.Finn, Chief Appellate Deputy
John F. Peters, Appellate Deputy District Attorney
Boulder, Colorado
Attorneys for Respondent: The Noble Law Firm, LLC Antony Noble
Tara Jorfald
Lakewood, Colorado
JUSTICE MÁRQUEZ delivered the Opinion of the Court.
JUSTICE COATS dissents.
¶1      A county court jury convicted Brian Penn of unlawful sexual contact, a class 1 misdemeanor, in violation of section 18-3-404(1)(a), C.R.S. (2015). On appeal to the district court, Penn argued that the county court committed reversible plain error by allowing an investigating officer to testify that he “had reason to arrest the defendant for a crime that had been committed.” The district court agreed, reasoning that the officer’s statement was both an impermissible legal conclusion that probable cause existed to arrest Penn and an improper opinion regarding the victim’s credibility. The district court reversed Penn’s conviction and remanded the case for a new trial. The People filed a motion for reconsideration, which the district court denied.
¶2     The People subsequently filed a petition for certiorari review. Penn moved to dismiss the petition as untimely under Colorado Appellate Rule 52(a) because it was filed more than forty-two days after the district court issued its order reversing Penn’s conviction. See C.A.R. 52(a) (requiring a petition for writ of certiorari to review a judgment of a district court on appeal from a county court to be filed “not later than 42 days after the rendition of the district court’s final judgment”). Penn argued that nothing in statute or rule expressly authorizes a party to move for reconsideration of a district court’s ruling on appeal from a county court or tolls the forty-two-day filing period under C.A.R. 52(a) pending resolution of such a motion.
¶3     We granted the People’s petition for writ of certiorari to review the district court’s order reversing Penn’s conviction and added the issue of whether a motion to reconsider a district court order reversing a county court judgment extends the forty-two-day period to petition this court for writ of certiorari.
[1]

¶4     We conclude that the timeliness of the People’s petition for certiorari review is governed by our decision in City of Aurora v. Rhodes, 689 P.2d 603 (Colo. 1984). In that case, we held that a party may file a petition for rehearing of a district court’s review of a municipal court judgment. Where such a petition for rehearing is timely filed, the district court’s judgment does not become final for purposes of the filing period for certiorari review under C.A.R. 52(a) until the district court denies the petition for rehearing. Id. at 609. Because our reasoning in Rhodes applies with equal force to a district court’s review of a county court judgment, we now hold, consistent with Rhodes, that a party may file a petition for rehearing of a district court’s review of a county court judgment within fourteen days of the district court’s ruling unless that time is shortened or extended by order, or unless the district court by express order disallows the filing of the petition. Where a petition for rehearing is timely filed in the district court, the district court judgment does not become final for purposes of the forty-two-day period to file a petition for writ of certiorari under C.A.R. 52(a) until the district court denies the petition for rehearing. Here, the People filed their petition for certiorari review within forty-two days of the district court’s denial of their motion for reconsideration, and therefore the petition was timely.
¶5     We further hold that the county court’s admission of the investigating officer’s testimony was not reversible plain error. Accordingly, we reverse the judgment of the district court and remand for reinstatement of the judgment of conviction.
I. Facts and Procedural History
¶6     The People charged Brian Penn with one count of unlawful sexual contact after K.H., a dental assistant, alleged that during a routine dental cleaning, Penn made several sexually charged comments, grabbed K.H.’s arm to look at her tattoo, and touched her breast without her consent. K.H. reported Penn’s behavior to her supervising dentist, who asked Penn to leave and counseled K.H. to contact the police. K.H. called the Boulder Police Department the next day.
¶7     At Penn’s trial in Boulder County Court, the People called Officer Babiak to testify about the steps he took as part of his investigation. The officer testified that he spoke with K.H. and that he also called Penn. When asked why he called Penn, Officer Babiak responded, “I had reason to arrest [Penn] for a crime that had been committed.” The prosecutor asked, “And what crime was that?” The officer answered, “Unlawful sexual contact.” Defense counsel did not object to this exchange, and neither party mentioned the officer’s statements in closing argument. Following deliberations, the jury convicted Penn as charged.

¶8     Penn appealed his conviction to Boulder County District Court, arguing, interalia, that the county court committed plain error by allowing Officer Babiak to testify that he had “reason to arrest” Penn for unlawful sexual contact. Penn argued that this testimony improperly insinuated that the People had additional evidence implicating Penn and usurped the jury’s function to determine guilt. Penn also contended that the testimony amounted to a legal opinion because the officer would have “reason to arrest” Penn only if he had probable cause to believe that Penn had committed the crime.
¶9     On August 26, 2014, the district court issued an order reversing Penn’s conviction and remanding the case for a new trial. The district court agreed with Penn that the county court erred by allowing Officer Babiak to testify that he had “reason to arrest” Penn for unlawful sexual contact. The court reasoned that the officer’s statement constituted a legal conclusion that he had probable cause to make the arrest. The court also expressed concern that the statement “could imply that [Officer Babiak] found K.H. credible.” Because K.H.’s testimony was the only evidence that Penn committed unlawful sexual contact, the court could not “say with confidence that the error did not contribute to Penn’s conviction.”

¶10      On September 10, 2014, fourteen days after the district court’s judgment, the People filed a motion for reconsideration, arguing that the officer’s statement that he had “reason to arrest” Penn did not amount to a legal conclusion, and that any error did not require reversal because it did not so undermine the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment. The district court denied the motion for reconsideration on October 20. Emphasizing that its ruling was based on the unique facts of the case, the court clarified that its “primary concern was with how [Officer Babiak’s] statement could be construed as a comment on [K.H’s] credibility” and noted that K.H.’s testimony was the only evidence that Penn committed the crime.
¶11      The People then filed a petition for writ of certiorari with this court on December 1, 2014, which was forty-two days after the district court’s denial of the People’s motion for reconsideration, but more than three months after the district court’s August 26 order reversing Penn’s conviction. Penn moved to dismiss the People’s petition as untimely under C.A.R. 52(a) because it was filed more than forty-two days after the district court’s order reversing his conviction. The People responded that the forty-two-day deadline under C.A.R. 52(a) was extended by their timely motion for reconsideration.
¶12      This court granted the People’s petition for certiorari review, adding the issue of whether a motion to reconsider a district court order reversing a county court judgment extends the period under C.A.R. 52(a) to file a petition for writ of certiorari.

II. Analysis

¶13     We first address the timeliness of the People’s petition for writ of certiorari.

Applying our decision in City of Aurora v. Rhodes, 689 P.2d 603 (Colo. 1984), to this case, we conclude that the People’s motion for reconsideration of the district court’s ruling extended the filing period under C.A.R. 52(a) to seek certiorari review, and therefore, the People’s petition for writ of certiorari was timely filed. We then turn to the merits of the case and conclude that the county court did not commit reversible plain error by admitting Officer Babiak’s testimony. Accordingly, we reverse the judgment of the district court and remand for reinstatement of Penn’s conviction.
A. Timeliness of the People’s Petition for Writ of Certiorari Under C.A.R. 52(a)
¶14      Section 13-6-310(1), C.R.S. (2015), provides that appeals from final judgments of the county courts shall be taken to the district court. Further discretionary review by the supreme court may be made only upon writ of certiorari. § 13-6-310(4). Similarly, section 16-2-114(1), C.R.S. (2015), and Crim. P. 37(a) provide that a county court judgment in a criminal action may be appealed to the district court; a party seeking further review by this court must file a petition for writ of certiorari, § 16-2-114(8); Crim. P. 37(h).
¶15     C.A.R. 52(a), in turn, requires a petition for writ of certiorari to review a judgment of the district court to be filed within forty-two days after the district court renders its final judgment:

(a) To Review a District Court Judgment. A petition for writ of certiorari to review a judgment of a district court on appeal from a county court, shall be filed not later than 42 days after the rendition of the final judgment in said court.
¶16      Penn argues that the district court rendered its final judgment in this case on August 26, 2014, when it reversed Penn’s conviction and remanded for a new trial. Therefore, he contends, the deadline under C.A.R. 52(a) to file a petition for writ of certiorari was October 8, and because the People’s petition was not filed until December 1, it was untimely.
¶17      The People acknowledge that no statutory provision or procedural rule expressly addresses whether a party may seek reconsideration of a district court’s ruling resolving a county court appeal—or whether such a request extends the deadline for filing a petition for certiorari review in this court.[2]
¶18      Instead, the People rely on our decision in Rhodes. In that case, we addressed a parallel question in the context of a municipal court appeal to the district court. There, the defendant was convicted in municipal court of careless driving. Rhodes, 689 P.2d at 607. She appealed her conviction to the district court, which issued an opinion reversing the defendant’s conviction and granting her a new trial. Id. Fourteen days later, the City of Aurora filed a petition for rehearing, which the district court subsequently denied. Id. The City of Aurora then filed a petition for certiorari review—twenty-nine days after the denial of its petition for rehearing and fifty-seven days after the district court’s opinion reversing the defendant’s conviction. Id. at 608. The defendant argued that the City’s petition for writ of certiorari should be dismissed as untimely under C.A.R. 52(a), which at that time required a petition for certiorari review of a district court judgment to be filed “not later than thirty days” after the rendition of the district court’s final judgment. Id. We disagreed and concluded that the City’s petition was timely filed. Id. at 609.
¶19      We began in Rhodes by observing that no statute or appellate rule expressly addressed the filing of a petition for rehearing in connection with an appeal to the district court from a municipal court judgment. Id. at 608. We noted, for example, that C.A.R. 40 authorizes the filing of a petition for rehearing within fourteen days after entry of judgment, but we acknowledged that the provisions of C.A.R. 40(b) are cast in terms that can be interpreted to limit that rule to petitions for rehearing filed in the court of appeals or the supreme court. Id. On the other hand, we observed that these provisions do not expressly prohibit the filing of such a request either. Id. 

¶20      We then recognized that petitions for rehearing serve “a useful function,” affording the district court the opportunity to correct a mistake of law and thereby avoid the expense and delay associated with further appellate proceedings. Id. We therefore held that a party seeking appellate review in the district court of a municipal court judgment should be entitled to file a petition for rehearing unless the district court by express order dispenses with the filing of the petition. Id. We held that in the absence of such an order of dispensation, the district court retains jurisdiction over the municipal court appeal for fourteen days after the entry of judgment unless the court, by order, shortens or enlarges that time. Id. We noted that if no petition for rehearing is filed within this fourteen day period, the district court should issue its mandate to the municipal court the day after that period expires. Id. at 608–09. Finally, we held that when a petition for rehearing is timely filed in the district court, “the district court judgment will not become final” for purposes of the filing period for a writ of certiorari under C.A.R. 52(a) until the district court denies the petition for rehearing. Id. at 609.
¶21      Although our decision in Rhodes arose in the context of a district court’s appellate review of a municipal court judgment, our reasoning in that case applies with equal force to a district court’s appellate review of a county court judgment. Indeed, “[t]he function of a district court in acting as an appellate court is the same whether the case originates in a municipal court of record or a county court.” People v. Anderson, 492 P.2d 844, 845 (Colo. 1972). Certainly, a petition for rehearing serves a similarly useful function when directed to a district court’s review of a county court judgment. Such a petition likewise affords the district court the opportunity to correct any mistakes of law and thereby avoid the expense and delay of further appellate proceedings.
¶22      Accordingly, we now hold, consistent with Rhodes, that a party may file a petition for rehearing of a district court’s review of a county court judgment within fourteen days of the district court’s ruling unless that time is shortened or extended by order, or unless the district court by express order disallows the filing of the petition. 689 P.2d at 608; see also C.A.R. 40(a)(1) (“Unless the time is shortened or extended by order, a petition for rehearing may be filed within 14 days after entry of judgment.”). In the absence of such an order, the district court retains jurisdiction over the county court appeal for a period of fourteen days after entry of judgment. Rhodes, 689 P.2d at 608. We further hold that where a petition for rehearing is timely filed in the district court, the district court judgment does not become final for purposes of the filing period for a petition for writ of certiorari under C.A.R. 52(a) until the district court denies the petition for rehearing. Id. at 608–09. In this case, the People filed a motion for reconsideration of the district court’s ruling resolving the county court appeal; such a motion serves as the functional equivalent of a petition for rehearing in an appellate context. The People then filed their petition for certiorari review within forty-two days of the district court’s denial of their motion for reconsideration. The People’s petition for writ of certiorari was therefore timely under C.A.R. 52(a).[3]
¶23      We now proceed to the merits of the case.

B. Admission of the Officer’s Testimony

¶24      The district court rulings challenged by the People concern Officer Babiak’s testimony that he had reason to arrest Penn for committing the crime of unlawful sexual contact.
¶25      The prosecution began its direct examination of Officer Babiak by asking about the steps the officer took during his investigation. When asked what he did after speaking with K.H., Officer Babiak responded, “Initially I contacted the District Attorney’s Office to see if there was sufficient probable cause to move forward.” Defense counsel objected and asked the court to strike this response from the record. The trial court sustained the objection. The prosecutor continued:
Prosecutor: Officer, I’ll just ask you what steps you took. Did you speak to any of the parties in the case?
Officer Babiak: I spoke to the complainant/victim.

Prosecutor: Okay. And did you speak to the Defendant at any point? Officer Babiak: Yes. I called him on the 29th of April.

Prosecutor: Did the Defendant say anything to you when you spoke to him on the phone?

Officer Babiak: At that time I just apprised him of why I was calling and asked him to meet me out at the Boulder County Jail.
Prosecutor: Why were you calling, Officer?
Officer Babiak: I had reason to arrest him for a crime that had been committed.
Prosecutor: And what crime was that?
Officer Babiak: Unlawful sexual contact.
Defense counsel did not object to this exchange. The prosecutor asked a few more
questions about the phone call, and then defense counsel briefly cross-examined the officer.
¶26      After Officer Babiak testified, a juror submitted a question for the officer before he left the stand about his conversation with K.H.: “Did [Officer Babiak] or to his knowledge any other [officer] express the view to the victim that the complaint was not sufficient for prosecution.” Defense counsel objected to this question, arguing that “it’s getting into probable cause” and that the officer’s “personal view that he thought the evidence was sufficient or insufficient is for the jury to decide.” The trial court agreed and did not ask the question.
¶27      On appeal, the district court held that Officer Babiak’s statement that he had “reason to arrest” Penn constituted an impermissible legal conclusion that the officer had probable cause to make the arrest. The court also expressed concern that this statement “could imply” that the officer found K.H. to be credible, and thus amounted to an improper opinion regarding her credibility. Because K.H.’s testimony was the only evidence that Penn committed the crime of unlawful sexual contact, the district court could not “say with confidence that the error did not contribute to the defendant’s conviction.” In its order denying the People’s motion for reconsideration, the district court clarified that its “primary concern” was that the officer’s statement “could be construed as a comment on the witness’ credibility.”

1. Standard of Review
¶28      Because Penn did not preserve his objection to Officer Babiak’s statements at trial, we review for plain error. Hagos v. People, 2012 CO 63, ¶ 14, 288 P.3d 116, 120. “Plain error is grave error that seriously affects the substantial rights of the accused.” People v. Stewart, 55 P.3d 107, 120 (Colo. 2002). Plain error must be both obvious and substantial—“plain” is synonymous with “clear” or “obvious.” People v. Miller, 113 P.3d 743, 750 (Colo. 2005). The plain error standard of review permits appellate courts to correct “particularly egregious errors.” Hagos, 
¶ 14, 288 P.3d at 120 (quoting Wilson v. People, 743 P.2d 415, 420 (Colo. 1987)). We reverse under plain error review only if the error “so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.” Id. 

2. Opinion Regarding Penn’s Guilt
¶29      On appeal to the district court, Penn argued that Officer Babiak’s statement that he had “reason to arrest” Penn was tantamount to an impermissible legal conclusion that he had probable cause to make the arrest. The district court agreed and reversed Penn’s conviction.
¶30      In his briefing to this court, however, Penn shifts his focus to the latter part of the officer’s remark—“I had reason to arrest him for a crime that had been committed.” Penn now contends that this statement was tantamount to an impermissible opinion that Penn was guilty of the crime of unlawful sexual contact. Penn points to the juror’s question asking whether any officer expressed the view to K.H. that her complaint was not sufficient for prosecution; he contends that this question indicates that the officer’s opinion about the sufficiency of the evidence was important to the jury’s determination of Penn’s guilt. Penn also notes that the jury’s lengthy deliberations indicate that it did not believe that evidence of his guilt was overwhelming. Thus, Penn argues, the admission of Officer Babiak’s testimony warrants reversal because it so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.
¶31      We have held that a witness cannot testify that he believes that the defendant committed the crime at issue. McKee v. People, 195 P. 649, 650 (Colo. 1921) (doctor’s opinion as to defendant’s guilt was not “competent evidence” and was therefore improper for the jury to consider); cf. Gallegos v. People, 403 P.2d 864, 873 (Colo. 1965) (distinguishing McKee and holding that police officer’s testimony that he identified the defendants was not error because it did not “give rise to the conclusion that they were, therefore, guilty of the crime charged”).
¶32      However, we have also held that, in some circumstances, police officers may testify about the reasons they took certain investigative steps, even where this testimony touches upon prohibited subjects. See, e.g., Casias v. People, 415 P.2d 344, 349 (Colo. 1966) (no error for detective to testify that he arrested defendant on the “strength of the warrant” because the testimony was “relevant and material to the People’s case as explanatory of the circumstances under which the automobile was stopped and the brothers . . . placed under arrest”).
¶33      Here, the officer’s statement was made in response to the prosecutor’s question asking why the officer called Penn. To the extent that Penn contends this statement reflected the officer’s opinion that Penn was guilty of the charged crime, it is not immediately apparent that the statement constituted any opinion whatsoever. Rather, the officer’s statement provided context for his action and simply explained, as a factual matter, why he called Penn as the next step in his investigation. Moreover, the prosecutor did not dwell on this statement, nor did either party revisit this testimony during closing argument. We conclude that any error in the admission of this single, brief statement was neither plain nor obvious, nor did it so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. See Hagos, ¶ 14, 288 P.3d at 120; see also People v. Ornelas, 937 P.2d 867, 872 (Colo. App. 1996) (police detective’s “fleeting” reference to evidence supporting issuance of a search warrant for defendant’s house did not undermine the fundamental fairness of the trial).
3. Comment on the Victim’s Credibility
¶34      The district court concluded that Officer Babiak’s statement that he had “reason to arrest” Penn “could imply” that the officer found K.H. to be credible, and therefore could be construed as an improper comment on K.H.’s credibility. It held that this error warranted reversal because K.H.’s testimony was the only evidence that Penn had committed the crime of unlawful sexual contact.
¶35      The People argue that CRE 608 does not bar testimony merely because it could be inferred to be a comment on another witness’s credibility. Here, they contend, Officer Babiak did not directly state that he believed K.H. was telling the truth, and even assuming that a jury could infer a credibility judgment from the officer’s testimony, any such inference is too tangential to constitute plain error.
¶36      CRE 608 bars opinion and reputation evidence offered to establish whether a witness was truthful on a particular occasion, and it is improper to ask a witness to comment on the veracity of another witness. Liggett v. People, 135 P.3d 725, 731 (Colo. 2006); People v. Eppens, 979 P.2d 14, 17 (Colo. 1999). Credibility determinations are for the finders of fact, and “asking a witness to opine on the veracity of another witness is prejudicial, argumentative, and ultimately invades the province of the fact-finder.” Liggett, 135 P.3d at 732.
¶37      In Eppens, we held that the trial court erred by admitting a social worker’s statement that she “felt that [the child victim] was sincere” because this was tantamount to testifying that she found the victim to be truthful. 979 P.2d at 18. Similarly, we have held that a doctor’s comment that the victim’s history was “very believable” constituted an opinion of the victim’s truthfulness on a particular occasion in violation of CRE 608. People v. Gaffney, 769 P.2d 1081, 1087–88 (Colo. 1989). On the other hand, we have concluded that CRE 608 does not bar testimony where the alleged inference regarding another witness’s credibility is too attenuated. See People v. Fasy, 829 P.2d 1314, 1318 (Colo. 1992) (rejecting the defendant’s argument that an expert witness’s testimony that the victim suffered from post-traumatic stress disorder “constituted an implied assertion that the victim was being truthful”).
¶38      Penn claims that the jury could infer from Officer Babiak’s testimony that he believed K.H.’s allegations, which led him to arrest Penn for the charged crime. Thus, in his view, the officer’s testimony violated CRE 608 because it amounted to an opinion that K.H.—the only witness he interviewed—was being truthful when she spoke with Officer Babiak.
¶39      Penn relies on People v. Snook, 745 P.2d 647, 649 (Colo. 1987), where this court affirmed the court of appeals’ reversal of a conviction because a social worker, who was qualified as an expert witness, impermissibly bolstered the child victim’s credibility. Snook is distinguishable, however. As an initial matter, the defendant in Snook objected contemporaneously, and this court applied the higher harmless error standard of review, concluding that because the credibility of the victim was the focal issue in the case, the error was not harmless. Id. 

¶40      More importantly, the expert witness’s statement at issue in Snook—that “children tend not to fabricate stories of sexual abuse,” id. at 648—was a far more direct comment on another witness’s credibility than Officer Babiak’s statement in this case. In Snook, we observed that the social worker’s testimony “necessarily” referred to the victim’s truthfulness because “the jury’s only conceivable use of such testimony would be as support for the complainant’s truthful character.” Id. at 649. In other words, the jury could directly infer from the social worker’s statement that the social worker believed that the victim was being truthful when she reported the sexual abuse. In contrast, nothing about the officer’s statement that he had “reason to arrest” the defendant would necessarily alert the trial court or the jury that the officer was opining on K.H.’s credibility. To reach such a conclusion based on the officer’s statement that he had “reason to arrest” Penn, the jury would have to infer that Officer Babiak both relied on K.H.’s statement and that he was arresting Penn because he subjectively believed that K.H. was telling the truth. We conclude that such inferences are so attenuated that any error in the admission of the officer’s statements was in no way clear or obvious. See People v. Gallegos, 644 P.2d 920, 927 (Colo. 1982) (concluding that officer’s single statement bolstering the credibility of a witness did not rise to the level of plain error). Thus, we conclude that the trial court’s admission of the officer’s statements was not plain error.

III. Conclusion
¶41     In sum, we hold that a party may file a petition for rehearing of a district court’s
review of a county court judgment within fourteen days of the district court’s ruling unless that time is shortened or extended by order, or unless the district court by express order disallows the filing of the petition. Where a petition for rehearing is timely filed in the district court, the district court judgment does not become final for purposes of the forty-two-day filing period for a writ of certiorari under C.A.R. 52(a) until the district court denies the petition for rehearing. Because the People filed their petition for writ of certiorari within this timeframe, it was timely. We therefore deny Penn’s motion to dismiss the People’s petition.
¶42      We further hold that the trial court’s admission of Officer Babiak’s testimony that he had “reason to arrest” Penn for a crime that had been committed was not plain error. Accordingly, we reverse the judgment of the district court and remand this case for reinstatement of the judgment of conviction.
JUSTICE COATS dissents.
JUSTICE COATS, dissenting.
¶43      Unlike the majority, I would not reach the merits of the People’s petition for writ of certiorari because I believe that petition was not timely filed in this court. While I agree that our holding concerning appeals from municipal court prosecutions in City of Aurora v. Rhodes, 689 P.2d 603 (Colo. 1984), was premised on their commonality with appeals from county court prosecutions, and therefore should apply equally to the latter class of appeals, I believe the petition in this case would be untimely, even if it arose from a municipal court prosecution. In fact, I am more than a little baffled by the majority’s application of our holding in Rhodes to the current appellate rules, effectively permitting more time to seek a writ of certiorari from an appeal to the district court than would be allowed from an appeal to the court of appeals itself, the court for which an express right to petition for rehearing was imputed to the district court in the first place.
¶44      In Rhodes we acknowledged that while they govern review in the court of appeals, C.A.R. 40, governing petitions for rehearing, and 41, governing issuance of the appellate court’s mandate, did not actually reference or appear to contemplate a petition for rehearing in a district court sitting as a court of appellate review, but for various policy reasons, and because that rule did not expressly forbid such a procedure, we extended to parties in the district court the same right to petition for rehearing, within the same fourteen days permitted in the court of appeals. 689 P.2d at 608–09. Similarly, although C.A.R. 52 expressly permitted a petition to this court within thirty days after the denial of a rehearing by the court of appeals, but made no mention of a rehearing in the district court and instead required that any petition to this court be filed not later than thirty days after rendition of the final judgment of that court, we nevertheless interpreted the rule to permit a petition to this court within thirty days after the denial of a rehearing by the district court. Id. At the time of our decision in Rhodes, the period specified in the rule for allowing a petition to this court, whether from a final judgment of the district court or from the denial of a petition for rehearing by the court of appeals, was the same―thirty days.
¶45      Between that time and this, the applicable appellate rules have undergone substantial amendment. As relevant here, Rule 52 was amended to permit a petition for writ of certiorari in this court whether a petition for rehearing had been filed in the court of appeals or not, and the thirty-day time limits with regard to a petition for writ of certiorari from either the district court or the court of appeals disappeared. Although Rule 52 still fails to make any reference to a petition for rehearing in the district court, with regard to the court of appeals, the rule was amended to provide different time periods for seeking review in this court, depending upon whether or not a petition for rehearing was filed. Specifically, the rule now prohibits a petition to this court before the expiration of the fourteen-day period allowed by Rule 40 for petitioning for rehearing, and permits only an additional twenty-eight days, rather than an additional forty-two days, after the denial of a petition for rehearing. Effectively, the rule therefore permits parties choosing to petition for rehearing and those choosing not to do so the same forty-two-day period within which to petition this court, disregarding any time during which a motion for rehearing might be pending before the court of appeals.
¶46      In the absence of any provision for a rehearing in the district court, Rule 52 now simply permits the same forty-two-day period to petition this court from a final judgment of the district court. Although in Rhodes we relied on Rule 41 for the proposition that a judgment of the district court, like that of the court of appeals, would become final only upon the denial of a timely filed petition for rehearing, and therefore the thirty-day period for seeking review in this court would begin to run only upon the denial of, or expiration of time to file, a petition for rehearing, Rule 41 has been substantially amended as well. As currently written, Rule 41 provides for the issuance of a mandate, and therefore the finality of an appellate judgment, at different times, depending upon whether or not a petition for rehearing has been filed; and with regard to the denial of a timely petition for rehearing, the finality of the judgment is pegged to the specific twenty-eight day period permitted for seeking further review of the court of appeals judgment.
¶47      Despite it being beyond all dispute that the only provision of Rule 52 contemplating a petition for rehearing has effectively retained the thirty-day period (now rounded down to twenty-eight days to conform to the current rule-making convention of expressing all time periods as multiples of seven) for petitioning this court after the denial of a rehearing, the majority interprets the amended rule to permit the parties to an appeal in the district court, but not the court of appeals, a full forty-two days from the denial of a rehearing, just as would be permitted in the absence of any petition for rehearing. I object to the majority’s reasoning largely for two reasons. First, I believe it represents a kind of mechanical adherence to one of our own prior holdings, without due consideration for the reasoning that led us to that holding. Second, even if this kind of literalism were thought to be worthy of a high court, I believe that, in this particular case, the majority actually misreads our precise holding in Rhodes.
¶48      With regard to the first of these reasons, the majority purports to be bound by what it considers to be our holding in Rhodes concerning the finality of a district court judgment: “Where a petition for rehearing is timely filed in the district court, the district court judgment does not become final for purposes of the filing period for a petition for writ of certiorari under C.A.R. 52(a) until the district court denies the petition for rehearing.” Maj. op. ¶ 24. In light of our rationale in Rhodes, even the majority appears to acknowledge the anomalousness of an interpretation allowing more time for a petition to this court from a judgment of the district court than from a judgment of the court of appeals, but it leaves this “discrepancy” to be addressed by amendments to the appellate rules in the future. Id. at ¶ 24 n.4. By contrast, to the extent that amendments already made to the appellate rules, following our holding in Rhodes, lead the specific terms of our analysis in that case to anomalous results, I would simply alter the terms of our analysis to make sense of the current appellate rules.
¶49      With regard to the second reason, however, I believe the anomalous result reached by the majority to be erroneous and the product of a misreading of our precise holding in Rhodes. Unlike the majority, I would find that we narrowly limited our holding in Rhodes to a statement about the rules as they existed at that time, to avoid the effect of just these kinds of subsequent amendments. Although the majority characterizes our precise holding as defining the finality of a district court judgment for purposes of the filing period for a petition for writ of certiorari under C.A.R. 52(a), which is now forty-two days, we actually limited our holding to defining the finality of a district court judgment “for purposes of the thirty-day filing period for a writ of certiorari under C.A.R. 52(a).” Rhodes, 689 P.2d at 609 (emphasis added). I think it clear that we structured our holding as we did―in terms of the district court’s retained jurisdiction and the lack of a final judgment until the denial of a petition for rehearing―only because that formulation allowed for identical treatment of a petition for rehearing in the district court and the court of appeals, and the same thirty-day period from the denial of which for seeking further review in this court. In any event, however, whether we did so for that reason or not, we clearly did expressly limit our holding concerning the finality of a judgment of the district court as having applicability only for purposes of the thirty-day filing period then existing in C.A.R. 52(a).
¶50      In light of the amendments to the scheme of the appellate rules in the interim concerning the non-mandatory nature of petitions for rehearing in the court of appeals and the variable periods allowed for seeking further review in this court, I would find the specific holding of Rhodes no longer applicable to either municipal or county court appeals to the district court. While I believe it remains useful to permit petitions for rehearing in the district court, and petitions for certiorari to this court following the denial of a rehearing, for largely the same reasons we articulated in Rhodes, I believe these things must now either be found, by analogy, in the provisions governing such petitions in the court of appeals or, if not, then found to be unavailable in the absence of a more express rule. In either event, the People’s petition for writ of certiorari in this case was not timely.
¶51     I therefore respectfully dissent.

[1]
 We granted certiorari to review the following issues:

1. Whether a timely filed motion to reconsider a district court order reversing a county court judgment extends the 42-day period to petition for a writ of certiorari to the Colorado Supreme Court.
2. Whether a police officer may testify to having probable cause in a criminal trial.
3. Whether a court may allow testimony from a witness, under Colorado Rule of Evidence 608, that does not expressly comment on another witness's credibility but could be inferred to be a comment on another witness’s credibility.
[2]
 By contrast, C.A.R. 52(b), which governs the timing of a petition for writ of certiorari to review a judgment of the court of appeals, expressly addresses petitions for rehearing:

(b) To Review Court of Appeals Judgment.
(1)Filing a petition for rehearing in the Court of Appeals, before seeking certiorari review in the Supreme Court, is optional.
(2)No petition for issuance of a writ of certiorari may be submitted to the Supreme Court until the time for filing a petition for rehearing in the Court of Appeals has expired.
(3)Any petition for writ of certiorari to review a judgment of the Court of Appeals shall be filed in the Supreme Court within 42 days of the issuance of the opinion of the Court of Appeals, if no petition for rehearing is filed, or within 28 days after the denial of a petition for rehearing by the Court of Appeals.
[3] We acknowledge that our decision in Rhodes effectively treated a party seeking certiorari review of a district court judgment the same as a party seeking review of a court of appeals judgment. At that time, C.A.R. 52(b) required a party seeking certiorari review of a court of appeals judgment to file a petition for rehearing; the rule then required the party to file a petition for writ of certiorari not later than thirty days after rehearing was denied. C.A.R. 52(b) (1973). Under current C.A.R. 52(b), however, a petition for rehearing is optional. Where a petition for rehearing is filed, the party has twenty-eight days from the court of appeals’ order denying rehearing to file a petition for writ of certiorari. Where no petition for rehearing is filed, a party has a total of forty-two days from the issuance of the court of appeals’ opinion to petition for certiorari review. Thus, under the current appellate rules, Rhodes now operates to afford a party seeking review of a district court judgment under C.A.R. 52(a) more total time in which to file a petition for writ of certiorari—at least where the party first files a petition for rehearing with the district court. This discrepancy, however, is best addressed by amendments to the appellate rules through the rules committee process.