23CA0394 Peo v Warmker 02-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0394
El Paso County District Court No. 16CR1309
Honorable Erin Sokol, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Gary Lynn Warmker,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Kuhn and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

---

Philip J. Weiser, Attorney General, Trina A. Kissel, Senior Assistant Attorney
General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Gary Lynn Warmker, appeals his conviction for one count of sexual assault on a child as part of a pattern of abuse. For the following reasons, we affirm the judgment of conviction but remand so the trial court may correct the mittimus.

## I.     Background

¶ 2     The charges in this case stem from T.W.'s report that Warmker, an extended family member, sexually assaulted her from 2003 to 2006 when she was four to seven years old. The incidents occurred around Christmas when T.W. visited her grandparents' house in Colorado Springs. T.W. alleged that during these visits, Warmker would place her on his lap, touch her chest, and reach down her pants to touch her genitals outside and inside of her underwear. T.W. recalled the abuse stopping when she was seven because as she got older, she realized that "what's happening [was] not okay" and stayed close to her parents at holiday gatherings.

¶ 3     When T.W. was sixteen years old, she disclosed the abuse to a teacher. After learning that the teacher had a duty to report the abuse, T.W. also told her mother. T.W.'s mother then called T.W.'s aunt, who became very upset and disclosed that Warmker had also

placed her on his lap and touched her inappropriately when she was a child.

¶ 4     The prosecution charged Warmker with six counts of sexual assault on a child - pattern of abuse, § 18-3-405(1), (2)(d), C.R.S. 2025.  In *People v. Warmker*, (Colo. App. No. 17CA1267, Aug. 6, 2020) (not published pursuant to C.A.R. 35(e)), a division of this court overturned Warmker's first conviction on four counts and remanded the case for retrial.  The prosecution then dismissed two counts during the second trial and tried the remaining two counts to verdict.  The jury convicted Warmker on one count for a 2003 incident but acquitted him on the other, and the court sentenced him to ten years to life in the Department of Corrections' custody. On appeal, Warmker argues that the evidence was insufficient to find a pattern of abuse and challenges the admissibility of a detective's testimony.  He also asks that we correct the mittimus to accurately reflect the jury's verdict.  We affirm, but we agree the mittimus must be corrected.

## II. Pattern of Abuse

### A. Additional Background

¶ 5     T.W. claimed that the abuse occurred multiple times and always in the same way: Warmker would place her on his right leg, hold her hip tightly with his right hand, and touch her over and beneath her underwear with his left hand.  T.W.'s aunt testified that Warmker abused her in a similar manner.  Another relative also testified that in 2007, she found Warmker sitting in the grandparents' basement with a three- or four-year-old girl on his lap.  According to this relative, Warmker was holding the girl "awkwardly," was flushed and breathing heavily, and pushed the girl off his lap as if he had been caught doing something wrong.

¶ 6     T.W. admitted that her memories "blurred together" and she did not remember much detail.  She did recall one specific incident when she was "around 6 or 7" years old and wearing a purple shirt and jeans.  While playing with a veterinary dog toy, Warmker allegedly picked T.W. up, placed her on his lap, and touched her inappropriately.  A photo introduced at trial showed T.W. wearing a purple shirt and jeans one year at Christmas, but evidence also proved that Warmker did not attend the Christmas celebration

when T.W. was ages six and seven. The prosecution dismissed two of the four counts during the second trial because of this evidence. The jury then convicted Warmker on one count based on a 2003 incident but acquitted on the other based on a 2004 incident.

¶ 7     Warmker argues on appeal that the evidence was insufficient to find a pattern of abuse and asks us to remand the case for resentencing. He relies on the fact that the jury acquitted him on one of only two remaining charges and argues this rendered finding a pattern impossible because the jury concluded no act occurred in 2004. He also asserts that T.W.'s testimony was too vague to support the jury's conclusion. The People counter that they were not required to prove a specific date of the second incident and that the jury only needed to conclude beyond a reasonable doubt that a second act occurred ten years before or any time after the predicate act, and the evidence supports this finding. For slightly different reasons, we agree with the People.

## B.     Standard of Review

¶ 8     "[S]ufficiency of the evidence claims may be raised for the first time on appeal and are not subject to plain error review." *McCoy v. People*, 2019 CO 44, ¶ 27. Thus, we review unpreserved sufficiency

4

claims de novo to determine whether the evidence, "viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Harrison*, 2020 CO 57, ¶ 32 (citation omitted). However, we "may not serve as a thirteenth juror and consider whether [we] might have reached a different conclusion than the jury." *Id.* at ¶ 33.

### C.  Applicable Law and Analysis

¶ 9    A defendant who "knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim." § 18-3-405(1).  Sexual assault on a child becomes a class 3 felony if the defendant "commits the offense as a part of a pattern of sexual abuse." § 18-3-405(2)(d).  A pattern is evidenced by "two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim," § 18-3-401(2.5), C.R.S. 2025, but "[n]o specific date or time must be alleged" to find the additional incident. § 18-3-405(2)(d).  A pattern of sexual abuse is a sentence enhancer

that, like the underlying offense, the prosecution must prove beyond a reasonable doubt. *People v. Honeysette*, 53 P.3d 714, 716 (Colo. App. 2002).

¶ 10    T.W. recalled only one specific memory of the abuse and admitted that others blurred together. However, our supreme court recognizes that "children often have difficulty recollecting, reconstructing, and identifying the specific incidents and dates of the alleged acts of sexual misconduct." *Erickson v. People*, 951 P.2d 919, 922 (Colo. 1998). Despite her hazy memory, T.W. detailed how Warmker abused her, provided a general timeframe, and stated that multiple incidents occurred in the living room and basement. Other family members' testimony corroborated T.W.'s recollection. Based on this evidence, the jury reasonably concluded that two or more incidents of sexual contact occurred. *See id.* ("[I]t is unreasonable to require exactitude from any victim, child or adult, in crimes involving repeated instances of abuse occurring over a prolonged period of time," and there are "relaxed specificity requirements" because of this). The evidence was sufficient for the jury to find that Warmker engaged in a pattern of abuse, and we will not disturb its finding.

### III. Arrest Rate Testimony

### A. Additional Background

¶ 11    Lieutenant Van't Land testified at trial about his qualifications and his role as the lead investigator in the case. Van't Land explained that he led or assisted on roughly 350 cases involving crimes against children. The prosecutor then asked, "[F]or every one of those cases that you were part of an investigation on, did those always end up in arrest?" Van't Land responded, "No. Crimes against children can be very difficult cases. My arrest rate was a little over 35 percent."

¶ 12    A similar exchange occurred in the first trial. In *Warmker*, No. 17CA1267, slip op. at ¶ 83, a division of this court concluded that Van't Land's testimony — that "not all investigations result in an arrest" — served no purpose except to imply that Van't Land believed Warmker was guilty. The division deemed the testimony inadmissible on retrial because a witness cannot opine on the defendant's guilt. *Id.* at ¶ 84; *see People v. Penn*, 2016 CO 32, ¶ 36. Despite this, the prosecutor again elicited the testimony and Van't Land supplemented his answer with arrest rate information.

Defense counsel did not contemporaneously object to the statement.

¶ 13     On appeal, Warmker asks that we follow our divisional colleagues, *Warmker*, No. 17CA1267, and hold the testimony inadmissible.  The People, while acknowledging the law of the case doctrine, invite us to reconsider the prior ruling because the testimony arose under changed conditions.  The People claim that the testimony became relevant during the second trial because defense counsel "began laying the groundwork" in voir dire for a theory that the case was inadequately investigated.  While we agree with the prior division's conclusion, we cannot say that any claimed error undermined the fundamental fairness of the trial or cast doubt on the reliability of the conviction.  *See People v. Conyac*, 2014 COA 8M, ¶ 54.

## B.     Standard of Review

¶ 14     Because defense counsel did not object at trial, the issue is unpreserved.  We review unpreserved issues for plain error.  *Id.* at ¶ 53.  Under this standard, the defendant bears the burden of establishing that at the time the error arose, "it was so clear cut and so obvious that a trial judge should have been able to avoid it

8

without the benefit of objection." *Id.* at ¶ 54. The defendant must also establish that the error "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the conviction." *Id.*

### C. Applicable Law and Analysis

¶ 15    Under the law of the case doctrine, "prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions." *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999). When applied to the court's power to reconsider its own prior rulings, the doctrine is a "discretionary rule of practice." *Id.* (citation omitted). However, trial courts have no discretion to disregard appellate rulings. *People v. George*, 2017 COA 75, ¶ 32.

¶ 16    We are not persuaded by the People's argument that introducing a theory during voir dire amounts to a changed condition at trial. *See People v. Wilson*, 2013 COA 75, ¶¶ 12-13 (voir dire is not intended as an opportunity to prime jurors to accept the defendant's theory of the case). Thus, we adopt the prior division's conclusion in *Warmker*, No. 17CA1267, that the testimony was inadmissible.

¶ 17    We acknowledge that different judges presided over the first and second trial and it is impractical to expect the succeeding judge to know each evidentiary ruling in the earlier trial.[1]  But here the judge had the benefit of the prior division's opinion deciding the issue, so the error in admitting the testimony was obvious.  *People v. Ujaama*, 2012 COA 36, ¶ 42 (for purposes of the plain error rule, an error may be obvious if the issue has been decided by a division of the court of appeals).  Even so, the testimony did not undermine the fundamental fairness of the trial or cast doubt on the reliability of the conviction.  *See Conyac*, ¶ 54.  The challenged testimony was a single statement in a six-day trial.  *See Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (comments that are "few in number" or "momentary in length" do not warrant reversal under the plain error standard (citation omitted)).  Moreover, the jury heard from T.W. and her aunt about the abuse they endured, as well as testimony from the family member who saw Warmker

---

[1] It is ultimately counsel's responsibility to object to evidence it knows to be improper.  *See People v. Acosta*, 2014 COA 82, ¶ 136 (Berger, J., concurring in part and dissenting in part) ("It is the responsibility of . . . counsel . . . to make appropriate objections and to determine how to properly offer the evidence they wish to present.").

awkwardly holding a young girl on his lap.  *See People v. Alengi,*

114 P.3d 11, 17 (Colo. App. 2004) (concluding that improper

testimony did not undermine the fundamental fairness of the trial

or cast doubt on the reliability of the conviction in light of other

evidence of guilt), *aff'd,* 148 P.3d 154 (Colo. 2006).  Finally, the jury

acquitted Warmker on one count, indicating that the jurors parsed

the evidence and were not unduly swayed by Van't Land's

statement.  *See People v. Quillen,* 2023 COA 22M, ¶ 39; *see also*

*People v. Larsen,* 2017 CO 29, ¶ 16 (concluding that a split verdict

indicates that improper evidence did not influence the jury).  Thus,

any claimed error does not warrant reversal.

#### IV.   Calendar Testimony

##### A.   Additional Background

¶ 18     Van't Land testified about his process for uncovering evidence

that corroborates or disproves a child victim's statements.  Van't

Land explained that because the alleged abuse occurred around

Christmas when T.W. visited her grandparents, he interviewed

T.W.'s grandmother.  During one of their meetings, T.W.'s

grandmother brought her wall calendars dating back to the early

2000s.  Van't Land testified that on those calendars, she "had

written in when [Warmker] was going to be arriving from Kansas. Usually a day or two or three before Christmas. Which helped corroborate that [Warmker] was out there at the Christmases just as [she] was saying, just as [T.W.] was remembering." Defense counsel did not object to the statement.

¶ 19 On appeal, Warmker argues that the trial court should have excluded this testimony because Van't Land's use of the word "corroborate" amounted to Van't Land opining that T.W. was telling the truth, and thus impermissibly bolstered her credibility. The People counter that the testimony was relevant to Van't Land's investigative process and Van't Land did not imply that the calendars corroborated T.W.'s allegations of sexual assault — merely that Warmker was present or absent on certain Christmases. We agree with the People.

### B. Standard of Review

¶ 20 We review unpreserved issues for plain error, applying the same legal principles articulated in Part III.B. *Conyac*, ¶¶ 53-54.

### C. Applicable Law and Analysis

¶ 21 Under CRE 608, after a witness's character for truthfulness has been attacked, the court may admit evidence tending to show

that the witness has a truthful character. *People v. Relaford*, 2016 COA 99, ¶ 26. However, a witness is prohibited from testifying "that another witness is telling the truth on a particular occasion." *Venalonzo v. People*, 2017 CO 9, ¶ 32. Doing so amounts to improper bolstering, which often arises in child sex assault cases when there are no eyewitnesses. *See People v. West*, 2019 COA 131, ¶ 39. The prohibition on improper bolstering applies to direct and indirect comments on a child victim's truthfulness. *Venalonzo*, ¶ 32.

¶ 22 We fail to see how Van't Land's use of the word "corroborate" amounts to him opining on the truthfulness of T.W.'s allegations. It served the relevant purpose of helping the jury understand Van't Land's investigation and merely tended to show that Warmker attended certain Christmases. This is not the type of improper bolstering our case law prohibits. *Cf. id.* at ¶ 35 (concluding that a forensic interviewer's testimony that the victims she interviewed exhibited behaviors similar to other child sex assault victims was improper); *People v. Wittrein*, 221 P.3d 1076, 1081-82 (Colo. 2009) (deeming inadmissible a social worker's testimony that, in her opinion, children the victim's age were not capable of fabricating

allegations of sexual abuse). Given this distinction, any error in admitting the evidence was neither clear nor obvious. *See Conyac*, ¶ 54.

## V. Mittimus Correction

¶ 23　Finally, Warmker argues — and the People concede — that we should correct the mittimus. The mittimus reflects a conviction on Count 2: sexual assault on a child as part of a pattern of abuse. The jury, however, acquitted Warmker of this charge. We therefore remand so the trial court may amend the mittimus to reflect the judgment of conviction only as to Count 1. *See* Crim. P. 36; *People v. Wood*, 2019 CO 7, ¶ 39 (the proper remedy for clerical errors in the mittimus is to correct the error).

## VI. Disposition

¶ 24　For the reasons stated, we affirm the judgment of conviction but remand so the trial court may correct the mittimus.

JUDGE KUHN and JUDGE SULLIVAN concur.